## B. E. Tilden v. Charles Blackwell.

1. FRAUD AND DECEIT—*In the Collection of Promissory Notes.*—A person who receives for collection a promissory note, stands in a fiduciary capacity toward the owner of such note. The law imposes upon him the highest measure of fidelity, and he is not entitled to profit himself by deceiving the owner as to the value of the note or the amounts collected upon it by him.

Action for Fraud and Deceit.—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed May 10, 1901.

H. J. TONER, attorney for appellant; SAMUEL W. JACKSON, of counsel.

STEERE & FURBER, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinon of the court.

This is an action by appellee for deceit. The material facts are not complicated. Appellee became the owner of a note dated November 18, 1895, for the sum of $2,000, made by the Chicago Pneumatic Tool Company, indorsed by the president of said company, secured by shares of its capital stock, and, by a separate agreement, made payable in quarterly installments of $250 with the interest, the first in-

stallment payable February 18, 1896. This note appellee intrusted to appellant for collection. The first two installments of $280 and $276.25 respectively, were paid appellant by the maker of the note on or about the days they respectively became due, and were remitted to appellee within about a week or ten days thereafter. Appellant afterward collected the next two installments as they matured, viz.: August 18, 1896, $272.50; December 2, 1896, $268.75. Up to this time appellant had collected all the installments, substantially, as they became due, with regularity and apparently without the slightest difficulty. The total amount he had so received amounted to $1,097.50, of which he had remitted to appellee $556.25, retaining in his hands the remaining $541.25.

Meanwhile some communications had passed between the parties. September 5, 1896, appellee received from appellant a letter, which, without disclosing that appellant had collected the installment due August 18th preceding, and all the other installments on the days they became due, stated that he had been trying for several weeks to adjust matters with the maker of the note; that he had made investigations, and could not see how such maker could stand the present hard times much longer; that it was probably best " to take anything we can get for the sake of getting something," and that " the matter is in such shape that they can not meet all their obligations; " and suggesting that it is best for him (appellant) to get from the maker of the note as many of the tools (which it dealt in) as he can, and settle the matter in that way, as " it is a question of something or nothing." The admission of this letter, on appellant's letter-head and signed with his name, was objected to because appellee could not state whose was the handwriting of the signature. But its genuineness seems to have been admitted by appellant in subsequent testimony, and is apparently conceded. The letter concludes by asking appellee to " please authorize me to do what I think best, and I will do the best I can." We have not space nor time to recite the evidence in detail. Appellant states that at appel-

lee's request he tried to sell the note and after making several efforts offered $450 therefor.   Appellee, evidently, was very unwilling to suffer such a loss, but at length, December 10, 1896, wrote appellant, " I have decided to be guided entirely by your judgment, knowing you are acting entirely for my interests, and will agree to the $450 cash settlement you mentioned some time ago, as the best method of winding up this unfortunate business."   In reply appellant sent, December 17, 1896, to appellee, a check for $500, saying, " I have finally got $500 cash for the note which I believe is more than you could realize in any other way."   Appellee thus received from appel-lant a total of $1,056.25 on the note, the face value of which was $2,000.   At that time appellant had in his hands, as before stated, $541.25, the receipt of which he had not reported to appellee.   He had been paid every installment regularly as it became due.   He says he sold the note to one Smith, but subsequently took it back from the purchaser because the latter was dissatisfied; and that he resold it later to another party who is now dead.   The subsequent installments continued to be collected in the main apparently by or through appellant, regularly as they became due.   There was paid $265 in March, 1897, and $261.25 May 22, 1897; and there is undisputed evidence tending to show that there was never a time, from the date of the note to its final maturity, when the company which made the note was not able and ready to pay each install-ment as it became due, and also to pay it in full.

In January, about a month after the receipt of the so-called purchase price of the note, appellee became suspicious, and in May following demanded from appellant its return.   The demand was not complied with, and July 1, 1897, appellee's attorney made a formal written demand for the note and securities, and the moneys paid thereon to appellant.   The note has since been paid by the maker in full, as the install-ments respectively matured.

Appellant states, by way of defense, that appellee told him in November, 1895, before the note in controversy was

executed, that he (appellee) would be satisfied to get three thousand dollars out of the four thousand he had put into the Pneumatic Tool Company, and that appellant might have the balance. It appears that appellee was paid two thousand dollars in cash by the Tool Company at the time he received the note. This, with what he obtained out of the sums collected by appellant, made three thousand dollars received by appellee, upon his original investment of four thousand. Appellant further claims that appellee owed him $500, and that he applied the $541.25 collected in August and December, 1896, prior to the alleged sale of the note, in payment of this alleged indebtedness to himself. The existence of such a debt is one of the disputed facts in the case. Appellant also insists that he sold the note in good faith.

We do not deem it necessary to review the transactions prior to and leading up to the making and delivery of the note in controversy. Nor can we review in detail the conflicting evidence. The questions of fact were presented to the jury, and by their verdict appellant was found guilty. They believed evidently that appellant knowingly made false representations as to the value of the note and the responsibility of the maker, and that appellee relied on them as true; that the alleged indebtedness of $500, from appellee to appellant, did not exist; and apparently that the alleged sale of the note was not made in good faith. They returned a verdict assessing appellee's damages at the full amount of the balance due on the note over and above the payments made him by appellant as above stated. We think the evidence fully justified the verdict. It is impossible to reconcile appellant's action in the matter so far as he has attempted to explain it, with good faith. If it be true that he so acted, he has certainly failed to make it appear. He may be unjustly dealt with by the judgment, but if so it is his own fault. The law imposed upon appellant, acting in a fiduciary capacity, the highest measure of fidelity; he was not entitled to profit himself by deceiving his principal. It is his duty to make it clear that

he dealt fairly and honestly. Appellee had a right to rely upon his representations as to the note, and if these were knowingly false, and appellee was injured by such reliance, appellant is liable. It can not be necessary to quote authorities sustaining these propositions. The general principles applicable may be found stated in multitudes of cases. Among others Endsley v. Jones, 120 Ill. 469, (481), and Hicks v. Stevens, 121 Ill. 186 (193) may be referred to.

Finding no reversible error the judgment of the Superior Court will be affirmed.